Good morning, Counsel. May it please the Court. Davina Chen on behalf of Arnou Aghamalian, who's present here in court with his wife. I'd like to reserve two minutes for rebuttal, and I'll try to watch the clock. Boy, I'm missing some paper here. Oh, I see. Okay. So the District Court denied Mr. Aghamalian's petition on three grounds. One, that it was untimely. Two, that his trial attorney's performance was objectively reasonable. And three, that Mr. Aghamalian suffered no prejudice. The District Court was wrong on all three grounds. Unless the Court would like to discuss timeliness, I'd like to focus on the ineffective assistance of counsel. On deficient performance, we know that Robert Ramsey understood that so long as Mr. Aghamalian received less than one year, he would not be deportable. And we know that he communicated that understanding to the Court, both in an attachment to a sentencing position paper and in open court at the sentencing hearing. And we know that that understanding was wrong. We also know that Mr. Aghamalian had serious concerns about the immigration consequences of this case. And why did he accept a plea deal that subjected him to the possibility of a sentence greater than a year? Well, clearly in this case, I mean, there's three answers to that. One, what's clear from this case is this plea agreement contemplated a sentence of 10 to 16 months. And the trial attorney in this case no doubt advised his client correctly that then-District Judge Paez would likely follow the plea deal and give him a sentence of 10 months. Second, in terms of the law, what Lee and Rodriguez-Vega tell us about this kind of error, the kind of error where an attorney tells their client, you have a chance of not being deported, when in fact the plea agreement, because it's stipulated to a loss of more than $10,000, he would definitely be deported. We know that this type of error affects the defendant's understanding of the consequences of his plea. It affects his decision-making process. And I think in Rodriguez-Vega, I like the quote from the Southern District of Florida, which is, I get on the plane all the time knowing it might crash, but if you tell me it's definitely going to crash, I'm not getting on. And likewise in this case. Yes, Mr. Aghamalian got on the plane knowing that there was a slight chance that Judge Paez would not follow the plea agreement and give a higher sentence. But if he had been told this plea agreement, actually because it stipulates to $10,000 loss, is an aggravated felony, he would not have accepted that plea agreement. And this court has accepted that analysis in both Kwan and in Rodriguez-Vega. Neither one of those pleas were the type of plea that guaranteed the defendant would not be deported. In each one of those cases, the lawyer told their client, you know, it's a technical chance, or you might get deported, but you probably won't. But the pleas themselves did not guarantee non-deportation. And this court found prejudice in both of them. So I know that that's what the district judge focused on, but it seems to me that factually it's incorrect, because he was advised he would get less than a year. Legally it's incorrect, because knowing that you're going to be deported is different from knowing that there might be a chance that if the judge does something that's unexpected, you might get deported. And this court has already accepted the proposition that the plea need not guarantee non-deportability for the prejudice. So that goes to the... Counsel, as you know, this is a little bit of an unusual case, because your client consulted with another lawyer in another case who told him this. Then you have the lawyer in this case that says basically he doesn't know much about this, but it sounds right to him, basically. This is a little different, right? In effect, he's relying on the first lawyer. That lawyer's not before the court. He wasn't before the court here. Does that affect our analysis in any way? I don't think it should affect the analysis. If he only relied on the other lawyer, and that lawyer never spoke to Mr. Becker. I mean, excuse me, Mr. Ramsey, right? And that lawyer... Mr. Ramsey and Mr. Agamalian never spoke about immigration consequences, and he was relying entirely on this other lawyer. I do think that that would affect the analysis in some way. That's not the fact of this case. In this matter, though, the reality is that this lawyer, if I read the record correctly, he did not pretend expertise. He was relying on what I gather was Mr. Becker told him, and I think he so indicated. Did he not? He said that at the sentencing hearing. I have to say it was quite colloquial. I mean, I frequently say things like I know nothing about math, and that I expose that I actually was a math major when I started college. In this case, what we know is that the conversations took place. So this is not a case where we don't know whether anyone talked about immigration consequences. At the change of plea itself, the judge asked Mr. Ramsey, is your client a citizen? He said no. So clearly they had had a discussion. The judge asked Mr. Agamalian, have you spoken to Mr. Ramsey about the immigration consequences? And Mr. Agamalian said yes. Mr. Becker has signed a declaration under penalty of perjury that he discussed this matter with Mr. Ramsey, and our client has submitted a declaration, a very detailed declaration. Let's say that's all true. I'm still struggling with the fact that Mr. Ramsey doesn't pretend to be an expert. He's relying on Mr. Becker. Mr. Agamalian is relying essentially on Mr. Becker because Mr. Ramsey says he didn't know whether he was a math major or not. The reality is this is an unusual situation, and I wonder how much that should affect our analysis in this case. I don't think it's that unusual because immigration lawyers and criminal defense lawyers frequently consult with each other. And in the case of U.S. v. Swaby from the Fourth Circuit, the criminal defense lawyer, and I cited my reply brief, relied heavily on an immigration lawyer who gave the wrong advice. And the Fourth Circuit still found ineffective assistance of counsel. Does it really matter whether Mr. Ramsey, who advised his client, did his research by looking it up in a book or by asking another expert, Mr. Becker? Exactly. There's many ways to get it wrong, but if you get it wrong and you advise your client wrong and then you also advise the court wrong, so let's be clear. This wasn't just, you know, there's no, nothing was hidden here. Mr. Ramsey told the court this, and the court relied on it in giving him a sentence of 11 months. And if Mr. Is that enough? So say that was, say there had never been a direct communication between Ramsey and your client about the immigration consequences. It was only through Becker somehow. And then the first time really Ramsey makes a direct statement is to the court. Is that enough to meet what you need to meet? I think it's possibly enough, but I don't think you need to reach that issue, because in this case it's very clear that the conversations did occur. Except the declaration says that your client's attorney told him, but because it just says attorney without a name, it could be either one of them, right? I don't think so. I think if you read that portion of the declaration, that one was clearly Mr. Ramsey. Whenever they talk about Mr. Becker, they always say Mr. Becker. And, again, in this case we know that Mr. Ramsey spoke to Mr. Agamalian about immigration consequences. How do we know? We know it because they talk about it at the change of plea, and we know about it because Mr. Ramsey says so at the sentencing hearing. I've talked to Mr. Agamalian. So the question is, is if Mr. Ramsey, he's not sure but he thinks so, what does this conversation look like if he hasn't told Mr. Agamalian he agrees? It's either I don't agree, in which case he's made misrepresentations to the court, and I don't think that we assume that he did that, or he does agree, in which case it's just bad legal research and he's held responsible for that. Do you want to save any of your time? It's up to you. Yes, I'll save the rest of my time for rebuttal. Okay. Good morning, Your Honors. May it please the Court. Roger Shea on behalf of the United States. This Court should affirm the District Court's denial of the petition for quorum nobis. I'd like to talk about affirmative misadvice and prejudice. The District Court made a factual finding after reviewing the record, including Mr. Agamalian's declaration, that there was insufficient evidence that Mr. Ramsey, Petitioner's trial counsel, had given affirmative misadvice. And as Your Honor ---- Could we look at that de novo, though? I mean, do we owe any deference to that? So in terms of the factual finding, I believe it would be whether it's illogical, implausible, or without support. In terms of there's a conflict in the record, Mr. Agamalian says, my lawyer told me and misadvised me. However, the District Court found in the opposite. And looking at the declaration that Your Honor pointed out, throughout the declaration it's specific as to whether Mr. Ramsey or Mr. Becker. However, in ER 77, paragraphs 17 and 18, he's vague. My attorney, my lawyer in the next paragraph. It's defendant's burden as a movement to put forth specific, articulable facts that show that he's entitled to relief. And the record gives enough evidence for the District Court ---- for this Court to affirm the District Court's finding. I'd also like to point to Mr. Becker's declaration at ER 224, paragraph 5, where he admits, I believed at the time that if Mr. Agamalian received a sentence of less than one year, his conviction would not be automatically deemed an aggravated felony requiring his mandatory deportation. And I expressed to Mr. Agamalian and Mr. Ramsey my understanding, period. Nothing about Mr. Ramsey adopting that advice. Nothing about Mr. Ramsey saying he would put that advice forth to Mr. Agamalian. But he did then refer to that in court. So why isn't the statement in court enough? So Petitioner challenges the ineffective assistance counsel he received regarding his plea agreement, not at sentencing. So that can be seen as contemporaneous evidence that supports the District Court's factual finding. But I don't think there's a dispute that he conferred with Mr. Becker. But that doesn't go to the advice that Mr. Ramsey provided to Petitioner before his plea. In the U.S. Martini case, I don't think counsel disputes that, that Petitioner is not entitled to effective assistance of counsel from Mr. Becker. Is there any reason to think, though, that he consulted with Becker again between the plea and the sentence? I mean, probably whatever he had in his head, he had in his head at the plea time, too, right? Perhaps. We can speculate on what the conversations might have looked like. But then again, it's defendant's burden to put forth specific articulable facts in the declaration. And he had years or at least months to put forth a declaration. And he shouldn't be remanded for an evidentiary hearing where a defendant or Petitioner has already received a bite at the apple. I'm not really following your point here because it seems to me it's undisputed that Mr. Ramsey was the defendant's lawyer for this particular charge. We know that Becker expressed this view about the effect of the plea agreement to Ramsey. There's no indication that Ramsey rejected that advice. Otherwise, we would have heard about it at the plea colloquy. And therefore, it seems to me that it's pretty clear that Ramsey, as the criminal defendant's lawyer, relied upon, as the formation of his advice to his client, among other things, Becker's comments. Now, that may be ineffective, it may be effective, and you can talk about that. But I think the key here is that Ramsey was the one who gave the defendant the advice, whether it was based on his own independent legal research, and there's no reason to think it did, but instead was based on Becker's statement. But it's still Ramsey's responsibility. So why isn't Ramsey responsible if it really is ineffective assistance, which it appears to be? Well, given that the deed is not retroactive, Ramsey didn't have an affirmative obligation to inform his client about the immigration consequences, whereas it's clear here that Becker, who petitioner had a relationship prior to this federal litigation in a state court matter, who admits he reached out to Mr. Becker first, and then reached out to Mr. Becker again when he was in a state court matter. Here, the standard is affirmative misadvice. And as in Quan, the court noted the petitioner asked the counsel a specific question, and that counsel chose to respond with an answer. So is the government's position that, in fact, the defendant here didn't really rely on Mr. Ramsey? He was relying on Mr. Becker? He received affirmative misadvice from Mr. Becker. Right. And the declarations he put forward aren't enough detailed specific facts to show that he received affirmative misadvice from Mr. Ramsey, and this court should affirm the district court's factual finding. Wait a minute. So you're saying that Ramsey didn't give affirmative misadvice? That's correct. Because everybody was relying on Becker, and Becker's the one that gave the bad advice. There's no evidence in the record that the declarant could have put forth specific facts stating that Mr. Ramsey affirmably misadvised him and chose not to do so, and this court interpreted that way and should be given deference. Let's assume arguendo, that the way we read the declarations was that Mr. Ramsey gave affirmative misadvice, whatever he got from a book or from talking to Mr. Becker. Then the situation is more like what the appellant says, right? That's correct, if you assume. However, the district court's finding was not illogical, implausible, or without support in the record. Isn't this a de novo review, as my colleague mentioned? Generally for a petition for quorum novus, but here, as I framed in the beginning, the factual finding that Ramsey did not affirmably misadvise after looking at the declaration. I think at ER09, the district court said, Petitioner's declaration is insufficient to establish that Ramsey affirmably misadvised him of immigration consequences. But there was no hearing or anything, right? That's just reading the paper record. That's correct. And is there any case that tells us that in a quorum novus situation where we're just reading a paper record, we apply that? So in Rodriguez-Vega, it says, Petitioner asked for an evidentiary hearing, that it's an abuse of discretion standard. And they kind of cite the 2255 standard that the motion has to raise detailed and specific facts, which resolution requires information outside the record. And here, we don't believe the district court erred in refusing to hold an evidentiary hearing. What do we do? Sorry. I mean, that doesn't sound like it speaks to whether we view this as a fact finding in this context in quorum novus or not. I haven't cited a case, but I think in turning to prejudice as well, Your Honor, I'd like to turn to that for a moment, that the clear factual findings and in prejudice, the court made a credibility determination. We think that as well is given higher deference. Wait, the district court here made a credibility finding? Yeah. So at ER10, Petitioner submitted a declaration and the district court found Petitioner's lawyer had told him that he could be deported based on his guilty plea, regardless of the sentence, then he would not have fled guilty. It's simply not credible. So, and I want to distinguish the cases that Petitioner brought up as well. Before you get there, this is on quorum novus, which as you know, is a most rare, most unusual appeal. From your perspective, the government's perspective, is this properly before us on a quorum novus appeal? I think based on the case law, there's irreparable injury. However, there's issues regarding timing and ineffective assistance of counsel. We didn't challenge that at the district court level, two prongs of the quorum novus analysis. So we believe that it perhaps is a proper vehicle, but are challenging the substance of Petitioner's claim in regards to ineffective assistance of counsel and timeliness. Since there was no evidence you're hearing in just a written record, when the paper says that the defendant relied on his lawyer and the only person who was his lawyer in this federal criminal charge was Mr. Ramsey, why isn't that pretty strong evidence that he relied on Ramsey? I mean, he didn't say, I relied on my lawyer from another matter or my previous lawyer from a state case. He said, I relied on my lawyer and my lawyer in this context, the only one that could be is Ramsey. Sure. If you look at a 20 some paragraph declaration, again, Ramsey and Becker are specified throughout, except in those two paragraphs. And again, I'll point to the preexisting relationship that Petitioner had with Mr. Becker in a state criminal matter. And then that he reached out first to Mr. Becker. So the court can speculate, but then again, point that the district court had ample evidence in the record to make the finding that Mr. Ramsey didn't affirmatively misadvise. Turning quickly to Kwan and Rodriguez Vega and Kwan, Petitioner accepted a plea where the guidelines range was 18 to 24 months. While there was a stat max of 30 years under Petitioner's understanding, Petitioner would not have been deported unless Petitioner received a sentence of five years. So effectively an immigration state plea. Additionally, in Rodriguez Vega, that Petitioner received a plea agreement in which he was presented with a favorable plea, but stipulated deportation. That Petitioner rejected that plea, work with her defense counsel to negotiate that provision out of it. So contemporaneous evidence in the record that shows that they would have in fact rejected a plea. And again, that credibility determination should be given deference by this court, given that it was able to see the declarations and other evidence in this case. And again, Petitioner accepted a plea with near certainty that would have given his deportation without a downward departure. Under his understanding of the law, any sentence of one year or higher would have resulted in his deportation. Your position is whoever's advice it was, he knew that there was a chance of being deported. Yes. If he was, he would have taken it to trial or negotiate a plea, a binding plea less than a year or where the guideline range is less than that. I see my time is running out. Any other questions by my colleague? All right. Thank you very much. So you have a little bit of time council. The government is focusing on what it calls a factual finding by the district court. But if you actually look at ER nine, there's no factual finding. The court first says nothing in the record suggests that Ramsey made any misrepresentations. That's actually, if it is a factual finding, it's clearly an incorrect. What about the credibility language that he decided? The credibility language is with respect to the prejudice prong. And on that prong, it's a pure legal credibility finding. The court said that anyone who would. A legal credibility. Well, if you read the actual language, he says it's not credible under Kwan. In other words, it seems that the court was thinking that it needed to be on all fours with Kwan, which in fact it was on all fours with Kwan. There was not a credibility finding with respect to seeing witnesses and making a determination whether they were credible or not. And I think that this court has as a matter of law held that it is credible that someone would accept a plea that did not guarantee non deportability if their lawyer says more likely than not, this plea will not render you deportable. So that credibility finding is with respect to the prejudice prong, which I think this court in Rodriguez Vega was very clear that that's not the correct analysis. The correct analysis isn't whether the plea that the person entered would guarantee. It's what advice did the, did the lawyer give to the client and did that affect the framework in which he understood the plea? In this case, the framework was, you're more likely than not going to be deported based on this plea agreement when in fact the plea agreement by stipulating to a loss of 10,000, more than $10,000 guaranteed that it was an aggravated felony. Can you speak for a moment to the declaration too, because it seems you said before that this part of the declaration named Ramsey and Becker and then suddenly switches to this. So on page 75, I mean, I'm on 75 paragraph nine, Mr. Agamalian very clearly states that it's Mr. Ramsey that gave the advice. Mr. Ramsey later said that he had spoken to Mr. Becker and he agreed that getting a sentence of less than one year was going to be our strategy at the sentencing so that I would not be deported. So it's simply not correct to say that the record has no evidence that this was Mr. Ramsey. The declaration very clearly states that it comes from Mr. Ramsey at paragraph on page 77. I would say it's at most a drafting error in this case. And Mr. Agamalian was a 21 year old Armenian Christian refugee from Iran. The idea that he should be deported based on a drafting error of his record. No, this lawyer, I think, I think it's very unjust. If you read the declaration, it's very clear that Mr. Ramsey gave the advice. Furthermore, Can you wrap it up? Can I just say one more thing? Yeah, that's wrapping it up. With respect to the ER-9, the judge made no finding. What he said was, even assuming petitioner's allegations are true, which we must do before we can summarily dismiss or rid of Eric Corbnovus, defense counsel at most told petitioner that he agreed with Becker's determination. Okay. Thank you very much. Appreciate it very much. Thanks to both counsel. The case just argued is.
judges: M. Smith, Friedland, Simon